R. J. WYNN, plaintiff in error, *vs.* R. C. SMITH, defendant in error.

A bill was filed by the complainant, S., against W. and A., for a specific performance of an agreement for the sale of a house and lot, in the town of Eatonton, praying that W. should specifically perform the alleged agreement, by making a good warranty title to the property to the complainant, and for such *other and further relief as is proper and equitable in the case.* On the trial of the cause, it appears from the record that some years prior to the 20th July, 1863, W. had sold the house and lot to B., taking his notes therefor, and executed to him a bond to make a title thereto when the purchase-money should be paid. Afterwards B. left the county, and on the 20th May, 1863, authorized A., in writing, to sell the property, and out of the proceeds of the sale, to first pay W. what was due him, and then to pay his other creditors. On the 20th July, 1863, A., as the agent of B., sold the property to the complainant, S., for the sum of $3,500 00 in Confederate money. A written memorandum of the terms of the sale was signed by A. as agent, and by S., the complainant. The written memorandum recites the terms of the sale, that S., the complainant, had paid A. $1,100 00 of the purchase-money, and A. bound himself to make a good warranty title to S. to the property, or that W. should do so when the balance of the purchase-money, $2,400 00, should be paid. It also appears, from the evidence in the record, that A., when about to make a sale of the property, applied to W. to know whether he would take Confederate money in payment of his notes due by B., and he said that he would, and in order to enable A. to consummate the contract made with S., the complainant, W. executed a deed to B. for the property, and deposited the same with A. There is evidence in the record that a short time after the purchase of the property from A., the complainant deposited the balance of the purchase-money in bank, and that A. was notified that the money was deposited there, subject to his order. The complainant, S., went into the possession of the property under this contract of purchase from A., as the agent of B. The jury, upon this statement of facts, under the charge of the Court, found a verdict in favor of the complainant, and decreed that W. should specifically perform the contract referred to in the bill, made by his agent, A., by making the complainant, S., a good warranty title to the property mentioned in said bond, referring to the written memorandum for the sale of the property of the 20th July, 1863, signed by A., as agent, and the complainant. The defendant moved for a new trial on several grounds, which were overruled by the Court: *Held,* that the decree, as rendered against W., requiring him to execute a warranty title to the property to S., the complainant was error, in view of the facts of the case as disclosed by the record. A. sold the property to S., as the agent of B., and as such agent, had no power or

authority to bind W. to make a warranty title to the property to S., and there is no evidence in the record of any such authority from W. to A., either express or implied, which would, in law or equity, authorize A., as his agent, to bind him, W., to make such a warranty title to the property to the complainant, as specified in the decree.

*Held further*, in view of the facts of this case, and of the power conferred on this Court, "to award such order and direction to the cause in the Court below, as may be consistent with the law and justice of the case:" that the judgment of the Court below be reversed, and a new trial ordered, unless the complainant shall consent to take and enter a decree that W. shall execute a warranty deed to the property to B., bearing the same date as the one executed by him to B., and deposited with A., as the agent of B., to enable him to consummate the contract made with the complainant for the sale of the property as the agent of B., and that the deed, so executed, shall operate as an extinguishment of W.'s interest in the property, and that A. be decreed as the agent of B., to execute a warranty deed to the property to S., the complainant, in the name of B., his principal.

Specific performance. Agency. Before Judge ROBINSON. Putnam Superior Court. March Term, 1869.

Smith's bill made the following case: He was told by Benjamin F. Adams that he had authority from N. Foster Brown and Jefferson Wynn to sell a house and lot in Eatonton, and that the price was $3,500 00 in Confederate money, and offered to buy it, if Adams would take $1,100 00 then and $2,400 00 in two or three weeks, to be sent to Adams, or deposited in bank, subject to his order. Adams accepted his offer, took the $1,100 00, gave Smith his bond conditioned upon the payment of the $2,400 00, to make Smith a warranty title thereto, or that Wynn should do so. All this was on the 20th of July, 1863. At and before the trade, Adams told Smith that Wynn had sold said property to Brown for about $1,700 00, and had given Brown his bond conditioned to convey to him the premises when said purchase-money was paid, that Brown paid $500 00 to Wynn, and then left the country insolvent, and had authorized Adams to sell the lot. Smith made the trade, believing said representations, and at once took possession of the premises under Adams, with the knowledge and consent of Wynn. Smith, within the time agreed on, sent the $2,400 00 to the

bank in Eatonton, and wrote Adams that the same was there subject to his, Adams', order.   At this time Adams was from home, and before his return, but after the said deposit was made, the Confederate Government passed the thirding-law, whereby said money had to be invested in a new issue of such currency at a loss.   Adams, upon his return, refused to receive said money unless Smith would loose the said difference between the old and new issue.   They corresponded upon the subject, the money daily depreciated, and it became worthless in said bank.   After the money became worthless, Wynn in some way got the keys of the house from Smith's tenant, took possession of the premises, and refused to make Smith a title, or give him possession, though he had held possession under said sale for over two years.   At the date of said sale, Brown was indebted to various (named) persons by judgments, amounting in the aggregate to $1,000 00, and the understanding was, that after paying Wynn, these judgments would be paid out of said $3,500 00, of which said creditors had notice, through their attorney-at-law, who, in their behalf, consented thereto.   He prayed that Wynn should be compelled to make him said warranty title to said premises.

Wynn answered, that he sold said premises to Brown at $2,000 00, and gave him a bond for titles, that Brown paid him something over $500 00, and went away; that after Confederate money was issued, Adams informed him, Wynn, that Brown had given him, Adams, a power of attorney to pay the balance of said purchase money, and asked Wynn if he would accept the currency, and make a deed in case he, Adams, sold the premises, and he, Wynn, agreed to do both; but he did not mean to make a deed to any one but Brown, and supposed that that was what Adams wished.   Afterwards Adams told Wynn of said sale to Smith, and requested Wynn to make a deed to the premises by the time Smith paid the $2,400 00, and at once Wynn made a deed to Brown and delivered it to Adams.   Smith refused to accept a title coming through Brown, but insisted upon a deed directly from Wynn to protect him against Brown's judgment cred-

itors, some of whom said attorney-at-law did not represent. Wynn knew that his purchase-money was safe, and had never intended involving himself in any trouble about it; he believed Adams would pay him first, and then the judgments, but he had no control over the judgments, and knew not their amounts, nor whether the creditors would accept such currency. Wynn denied having anything to do with putting Smith into possession further than agreeing to accept said currency, and make said deed as aforesaid, said he had no sort of control of the premises at that time, but was willing to have them occupied to preserve them, because to the property he looked for payment of his purchase-money. He took possession because Smith told him he would have nothing more to do with the premises, and to keep them from ruin till he could sell the premises by law under a *fi. fa.* for the said purchase-money which he had previously obtained; the sale took place, Wynn bought the property, and now holds it under a sheriff's deed. He said he was ever willing to have received Confederate currency on his notes, but none was offered to him. He said Smith was notified of his intention not to make the deed directly to him in time for Smith to have taken from bank, and used said $2,400 00, and its loss was Smith's fault. Nevertheless, in sympathy for Smith, he offered to allow him to have the rent of the premises long enough to repay said loss, but Smith would not so agree. He denied that Adams ever was his agent in the premises, and said he had no authority so to bind him.

On the trial, Smith's solicitor read in evidence said bond for titles to him, acknowledging the receipt of the $1,100 00, and agreeing upon the payment of $2,400 00, personally to make him a warranty title to said premises, or that Wynn should do so. It was signed "B. F. Adams, agent." Smith testified to the truth of the statements in his bill, and that Adams, at the time, was asked if he could make good titles, and if Wynn would make the deed, to which he replied, "there will be no difficulty about that;" that he lost the whole $3,500. They read in evidence a letter from Adams to Smith, dated the 3d of February, 1864, in which Adams

Wynn *vs.* Smith.

stated that there were no judgments against Brown, but those at Eatonton, amounting to $4,200 00 or $4,300 00, and that he had arranged to pay them off with said $3,500 00, and urging Smith to accept the deed through Brown, etc.   They also read another letter from Adams to Smith, dated the 19th of March, 1864, in which he urges upon him that Brown's title will be good, remonstrates at Smith's wish for him, Adams, to make the title personally, and said that he never expected to be held to a literal compliance with his bond, nor did Smith at one time require or expect it of him.   In it were these words, ("Mr. Wynn had told me that he would make the deed if I sold the property, and I only intended by the bond to give you strong assurance of my belief that he would do so.   If I am forced to make the deed you must prepare to pay me in the new currency."   The person who, in 1863, was acting as agent of the bank, testified that Smith had a package in bank specially deposited, but he did not remember whether it was subject to Adams' order   Here complainant rested.

Wynn's solicitor moved to withdraw from the jury so much of said letter as is in (), but the motion was overruled.   Wynn was then introduced, and reiterated the statements of his answer.   He then put in evidence a power of attorney from Brown, dated in May, 1863, authorizing Adams to sell said premises and certain personalty, and pay Wynn, and certain debts for which Adams was Brown's security, and to pay him, Brown, the surplus, if any.

ADAMS, introduced by Smith, testified, that he did not remember that Smith was to make such deposit, but thought Smith was to pay him in a short time, and said that he did not remember receiving said letter notifying him of such deposit.

The Court charged the jury as appears in the motion for a new trial, and they found for Smith.

Wynn's solicitors moved for a new trial upon the following grounds:

1st. Because the Court erred in refusing to withdraw from the consideration of the jury, on motion of defendant's coun-

sel, the following words, contained in a letter from B. F. Adams to complainant, and read to the jury, to-wit: "Mr. Wynn had told me that he would make the deed if I sold the property."

Objection to said testimony being made, on the ground that no connection as principal and agent had been shown, or attempted to be shown, between Adams and this defendant, and that said testimony was hearsay, and otherwise illegal.

2d. Because the Court erred in charging the jury as follows: "The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the act of another in his behalf, and the act of ratification relates back to the act ratified. The principal is bound by the act of the agent whenever the agent acts within the scope of his authority, and the form in which the agent acts is immaterial. If the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal. The agent's authority will be construed to include all necessary and usual means of effectually executing it. Private instructions given by principals to agents, and not known to persons dealing with agents, cannot affect the rights of persons dealing with agents."

Objection to said charge being, that the same is not applicable to, nor supported by, the facts of this case.

3d. Because the Court erred in the following charge to the jury, viz: "Applying these general principles to this case, the Court charges the jury that if they believe, from the evidence, that Mr. Wynn, one of the defendants to the bill, either expressly or by implication, authorized Mr. Adams to sell the house in controversy, and promised to make a deed to the house when sold by Mr. Adams, then Mr. Wynn would be bound by the acts of Mr. Adams."

Objection to this charge being, that it is not law under the facts of this case.

4th. Because the Court erred in the following charge to the jury, viz: That "if the understanding between Mr. Adams and Mr. Smith at the time of the sale of the house, was

that Mr. Adams had full authority from all parties in interest to sell the house, and make a title to the same, then Mr. Smith is without fault, on his part, in making the purchase."

Objection to said charge being, that it is incomplete in this—the Court ought to have added these words: "But if any interested party had not given authority to sell, then he would not be bound by the contract of Mr. Adams, unless upon a full knowledge of the agreement between Mr. Adams and Mr. Smith, he should afterwards ratify it."

5th. Because the Court erred in his charge to the jury as follows, viz: "That if the jury believe, from the evidence, that Mr. Smith paid a portion of the purchase-money when the contract was made by him and Mr. Adams, and deposited the balance of the money within a short time thereafter, in compliance with the terms of the contract, and went into possession of the property, the contract was so far executed by compliance of one party with the terms of the contract, that equity will decree a specific performance by the other."

Objection to this charge being, that it is not the law of the case, nor supported by the facts of the case, so far as respects this defendant.

6th. Because the Court erred, after reading to the jury the request to charge, hereinafter set forth, made by this defendant's counsel, in saying: "Gentlemen, this is certainly the law, and as you will perceive, I have already, substantially, given it in charge."—said remark having the effect or tendency of drawing the attention of the jury from the legal significance of the request.

7th. Because the verdict of the jury in said cause is contrary to the principles of justice and equity.

8th. Because said verdict is contrary to the charge of the Court, made upon the written request of this defendant's counsel, viz: "To authorize the jury to find for the complainant against Wynn, they must believe, from the evidence, that Mr. Adams was the authorized agent of Mr. Wynn, or that Mr. Wynn afterwards ratified Mr. Adams' conduct, after a full knowledge of his conduct in the case.

9th. Because said verdict is strongly and decidedly against the weight of the evidence.

The Court refused a new trial, and that is assigned as error.

THOMAS G. LAWSON, for plaintiff in error.

JUNIUS WINGFIELD, for defendant in error.

WARNER, J.

This was a bill filed by Smith, the complainant, against Wynn and Adams, praying that the defendant, Wynn, might be specifically decreed to execute a good warranty title to a house and lot in the town of Eatonton. It appears from the record, that on the 20th of July, 1863, Adams, as the agent of Brown, sold the lot to the complainant for $3,500 00 in Confederate money, and on that day signed a written memorandum, in which the terms of the sale were recited, that $1,100 00 of the purchase-money had been paid, and Adams bound himself to make a good warranty title to the property when the balance of the purchase-money should be paid, or that Wynn should do so. This written memorandum was signed by Adams as agent. It also appears in the record, that some years before this sale to the complainant took place, Wynn had sold the house and lot to Brown, taking his notes for the purchase-money, and giving him a bond to make a title thereto when the purchase-money should be paid. Brown went into the possession of the lot, and occupied the same for some time, and when he was about to leave the county on the 20th May, 1863, gave written authority to Adams to sell the house and lot, and out of the proceeds of the sale to pay first what was due to Wynn, and then to pay his other creditors. It was under this authority from Brown that Adams, as the agent of Brown, sold the property to the complainant. When Adams was about to sell the house and lot, he applied to Wynn to know if he would take Confederate money for the debt due him from Brown, and he said that he would, and executed a deed conveying the property to Brown, and deposited the same with Adams, the agent of Brown, to enable him to consummate the trade made with complainant.

There is evidence in the record that within a month after the complainant purchased the property from Adams, he deposited the $2,400 00, the balance of the purchase-money in bank, and Adams was notified that the money was deposited there subject to his order. The complainant went into the possession of the property under the contract of purchase from Adams as the agent of Brown. The jury, upon the trial of the cause, under the charge of the Court, returned a verdict in favor of the complainant, and decreed that the defendant, Wynn, should specifically perform the contract made by Adams with the complainant on the 20th July, 1863, by making to the complainant a good warranty title to the property. The defendant, Wynn, moved for a new trial, which was overruled by the Court, and that is the error complained of here. There is evidence in the record which would have authorized the jury to have found that Adams was the agent of Wynn to receive and pay to him the amount due on Brown's notes, but there is no evidence that would have authorized the jury to find that Adams was the *agent of Wynn* to bind him, to make a *warranty deed to the property to the complainant.* In the absence of any *positive evidence* that Adams had the authority to bind him as his agent to make such a warranty deed to the complainant for the property, the fact that Wynn executed the title to Brown, and deposited it with Adams to enable him, as the agent of Brown, to consummate the trade made with the complainant, rebuts the presumption that Adams was his agent to make the title to the property. Adams could not bind Wynn to make a warranty title to the complainant without *authority* from Wynn to do so, and we find no such authority, either express or implied, disclosed by the evidence in the record before us. The complainant's bill for specific performance is based on the written memorandum signed by Adams, as agent, who had the written authority of Brown to sell the property, and although Adams, as Brown's agent, could bind him to make a title to the property to the complainant, still he could not bind Wynn to do so without Wynn's *authority,* and the evidence does not show that Adams had *any authority* from Wynn to bind him to

make a *warranty title* of the property to the complainant. Adams was Brown's agent to sell the property and make a title thereto, but he was not Wynn's agent to sell it for *him*, and bind *him* to make a *warranty title* thereto, *without his authority.* If Wynn had authorized Adams to sell the house and lot to the complainant as his agent, (of which fact there is no 'evidence in the record,) such authority to *sell* the property would not of itself have authorized Adams, as his agent, to bind him to *warrant* the title to the property sold. To have authorized Adams as the agent of Wynn to bind him to make a warranty title to the property, he must have had the *special authority* of Wynn to do so: Gibson vs. Colt, 7th John. Rep., 390; Nixon vs. Hyserott, 5th John. Rep., 57. The agent, in order to bind his principal to make a *warranty* title to the property sold, must have the authority of his principal so to bind him, which the evidence in this case does not show that Adams had from Wynn in any view of the facts contained in the record. Under the power conferred on this Court by the Code, to award such order and direction to the cause in the Court below as may be consistent with the law and justice of the case: it is considered and adjudged by the Court that the judgment of the Court below be reversed, and a new trial ordered, unless the complainant shall consent to take and enter a decree that Wynn should execute a warranty deed to the property to Brown, bearing the same date as the one executed by him to Brown heretofore, and deposited with Adams, as the agent of Brown, to enable him to consummate the contract made with the complainant for the sale of the property as the agent of Brown, and that the deed so executed shall operate as an extinguishment of Wynn's interest in the property, and that Adams be decreed as the agent of Brown to execute a warranty deed to the property to Smith, the complainant, in the name of Brown, his principal. Let the judgment be entered in conformity with this opinion on the minutes of the Court.

BROWN, C. J., concurred in the judgment, saying he did not agree as to the warranty by Wynn, but he wrote no opinion.